IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

    v.

**GERALD JOHNSON et al.**

**Criminal No. JKB-16-0363**

...ooOoo...

## MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Criminal Procedure 16(d)(1), the government seeks a protective order authorizing limited disclosure of the identity of two individuals, Person 1 and Person 2, who have provided exculpatory information to federal investigators regarding the 2011 murder of Victim H.M. The government alleges that defendant David Hunter murdered Victim H.M. as an overt act in furtherance of the charged racketeering conspiracy in this case. Because Hunter was previously convicted of murdering Victim H.M. in state court, and because an appeal of that conviction is pending, the government submits that Hunter has a more immediate need to learn the identities of Person 1 and Person 2 than the other eight defendants in this case. Accordingly, the government asks the Court to enter a protective order authorizing the identification of Person 1 and Person 2 to Hunter immediately, and to counsel for the other eight defendants two months before trial, subject to the additional terms and conditions discussed below. Such an order will permit counsel for all parties to make effective use of the information provided by Person 1 and Person 2 – the substance of which has already been disclosed – while at the same time limiting the serious risk that Person 1 and Person 2 will be harmed or killed by the defendants or their BGF associates.

**FACTUAL AND PROCEDURAL BACKGROUND**

The government has charged nine defendants with conspiring to participate in a racketeering enterprise – the organization known today as the BGF Greenmount Regime – that operated in the Greenmount Avenue corridor of Baltimore City between 2005 and the date of the superseding indictment. The indictment alleges that the defendants committed multiple overt acts in furtherance of the charged conspiracy, including the murder of Victim H.M. by Hunter in June 2011.

In August 2015, a Baltimore City jury convicted Hunter of murdering Victim H.M. and of participating in a criminal gang, among other offenses. An appeal of that verdict is pending. The government understands that one of the primary issues being litigated on appeal is whether state prosecutors violated their obligation under *Brady v. Maryland* by failing to disclose a recorded interview with a witness who was cooperating in a different case (CW-1), during the course of which the witness stated that two individuals other than Hunter had claimed responsibility for murdering Victim H.M.

In November and December 2016, as part of its ongoing investigation of this case, the government interviewed two individuals (Person 1 and Person 2), both of whom provided information that tended to corroborate the information provided by CW-1. Person 1 told investigators that on the day Victim H.M. was murdered, he participated in a conversation with the same individuals implicated by CW-1. During that conversation, the individuals told Person 1 that they had murdered Victim H.M and provided certain details regarding how the murder was carried out.

Person 2 told investigators that he does not believe that Hunter murdered Victim H.M. He

further stated that approximately two years after Victim H.M. was murdered, he heard from other, unidentified individuals that the same individuals implicated by CW-1 had committed the murder.[1] The government does not believe that Person 2's information would be admissible at trial because it is hearsay that does not fall within any recognized exception to the hearsay rule.

On December 6, 2016, the government produced a redacted ATF report summarizing the exculpatory information provided by Person 1 to Hunter's counsel. *See* Ex. 1. On December 21, 2016, the government sent a letter to all defense counsel in this case. *See* Ex. 2. The letter included two attachments: (i) the redacted ATF report summarizing the exculpatory information provided by Person 1; and (ii) a similarly redacted ATF report, this one summarizing the arguably exculpatory information provided by Person 2.

In making these disclosures, the government redacted all references to the identities of Person 1 and Person 2. The government made these redactions, with the approval of a supervisor, because it believed that Person 1 and Person 2 could be subject to retaliation by the defendants or their associates on account of their willingness to speak with federal investigators in this case. The government now moves for a protective order that will facilitate the limited disclosure of the identity of Person 1 and Person 2, subject to the terms and conditions set forth below.

## ANALYSIS

Federal Rule of Criminal Procedure 16(d)(1) confers broad authority on the Court to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief" for good cause. Of particular relevance here, the Advisory Committee Notes to Rule 16 specifically address the issue

---

[1]  The government does not believe that the information provided by Person 1 and Person 2 was available to state prosecutors at the time of Hunter's prosecution for murder in the Circuit Court for Baltimore City.

3

of witness security:

> Subdivision (d)(1) deals with the protective order.  Although the Rule does not attempt to indicate when a protective order should be entered, it is obvious one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.

Fed. R. Crim. P. 16 (Advisory Committee Notes, 1974 Amendment) (citations omitted).

Here, there is reason to believe that any individual suspected of providing information to law enforcement will be subject to physical harm by the defendants or their BGF associates.  At the trial of this matter, the government will prove that BGF members used threats and violence, including murder, to intimidate witnesses and prevent them from cooperating with law enforcement.  In fact, one of the fundamental rules of BGF is that cooperation with law enforcement is punishable by death.  The government will also prove that the primary method through which BGF members identified witnesses, or "snitches," was to obtain paperwork – including transcripts, affidavits and/or interview reports – proving that a particular individual was providing information to the government.

The government will offer multiple specific instances of this type of witness intimidation.  For example, the government will prove that in early May 2013, defendant Wesley Brown shot and killed Victim M.M., at the direction of defendant Gerald Johnson, to prevent him from testifying against defendant Norman Handy after members of BGF discovered search warrant paperwork establishing that Malone had provided information to law enforcement implicating Handy in a robbery and shooting.   Similarly, the government will prove that less than one week after Victim M.M. was murdered, defendant Kenneth Jones confronted another individual, in the presence of defendant Johnson, and accused that individual of providing information to law

4

...
...
...

enforcement. During this encounter, Jones told the individual, in substance, that s/he was lucky that there was no "paperwork" proving that s/he was a snitch, because otherwise s/he would be in trouble.

Based on this evidence, the government submits that Person 1 and Person 2 will be subject to retaliation by the Defendants and their associates if their identities are disclosed. The government recognizes, however, that both Person 1 and Person 2 provided information that is either definitely (in the case of Person 1) or arguably (in the case of Person 2) exculpatory and material to the defense. Under these circumstances, the government agrees that the identities of Person 1 and Person 2 should be disclosed.

The more difficult question, however, is *when* such disclosure should be made. In making that decision, the Court should employ the balancing test articulated by the D.C. Circuit and subsequently followed by two district courts from within this Circuit: "Courts can do little more in determining the proper time for disclosure than balance in each case the potential dangers of early discovery against the need that *Brady* purports to serve of avoiding wrongful convictions." *United States v. Pollack*, 534 F.2d 964, 973-74 (D.C. Cir. 1976); *see also United States v. Shifflett*, 798 F. Supp. 354, 356-57 (W.D. Va. 1992) ("[T]he due process requirements of *Brady* must be met early enough to allow the defense to make effective use of the exculpatory statements at trial, while at the same time the dangers that the Jencks Act seeks to control must be minimized."); *United States v. Beckford*, 962 F. Supp. 2d 780, 791-95 (E.D. Va. 1997) (applying similar balancing test, and noting that "premature, wholesale disclosure of witness statements, even those containing exculpatory or impeachment information, would vitiate an important function of the *Jencks* Act – the protection of Government witnesses from influence, threats, harassment, and

5

physical harm").

On the facts of this case, the government submits that the application of the balancing test discussed above is somewhat different with respect to Hunter than it is with respect to the other eight defendants. That is because Hunter – the only defendant who is directly implicated in the murder of Victim H.M. – has a pending appeal of his state murder conviction, creating a more immediate need to learn the identity of witnesses who may be material to his defense. In light of this key difference between Hunter and the other defendants, and considering the potential safety risks to Person 1 and Person 2 discussed above, the government requests a protective order authorizing identification of Person 1 and Person 2 to Hunter and his counsel immediately; and to counsel for the other eight defendants two months before trial, *i.e.*, September 13, 2017. Disclosure on this timeline will achieve three significant objectives: (i) it will afford Hunter and his counsel a meaningful opportunity to use the information provided by Person 1 and Person 2 in connection with the pending state appeal (or a related post-trial proceeding in state court); (ii) it will afford counsel for the remaining eight defendants a meaningful opportunity to use the information in the pending federal case; and (iii) it will significantly reduce the safety risk posed to Person 1 and Person 2 by the defendants and their associates.

The government further requests that the proposed protective order include the following terms: (i) it should require all counsel to whom Person 1 and Person 2 are identified, regardless of when such identification is provided, to refrain from using the names of Person 1 or Person 2 in public court filings; and (ii) it should prohibit all counsel from disseminating copies of reports identifying Person 1 and Person 2 to their clients or the media. These additional terms will further reduce the safety risk to Person 1 and Person 2 without impinging the right of any defendant to

prepare a defense in this case.

    WHEREFORE, the government respectfully requests that the Court entered the proposed protective order attached to this motion.

                          Respectfully submitted,

                          Rod J. Rosenstein
                          United States Attorney

By: _____/s/_____
        Peter J. Martinez
        Christina A. Hoffman
        Assistant United States Attorneys
        36 South Charles Street
        Fourth Floor
        Baltimore, Maryland 21201
        (410) 209-4800

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 24, 2017, a copy of the foregoing Motion for Protective Order was filed electronically with the Court using the CM/ECF system and served using the CM/ECF system via e-mail to all counsel of record.

By: /s/
Peter J. Martinez
Assistant United States Attorney